1

2

3            UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
4                    AT SEATTLE

5    MICHAEL DINGMAN,

6                    Plaintiff,

7        v.                                   No. C04-2360-MJP

8    JO ANNE B. BARNHART,                     ORDER ON DEFENDANT'S
     Commissioner of Social Security         OBJECTIONS TO REPORT AND
9                                             RECOMMENDATION ON AWARD
                    Defendant.                OF SOCIAL SECURITY DISABILITY
10                                            BENEFITS

11

12          This matter comes before the Court on Defendant's objections to the Report and

13   Recommendation ("R&R") from Magistrate Judge James Donohue reversing the Social Security

14   Administration's ("SSA") denial of Social Security Disability Insurance Benefits ("DIB"). Having

15   considered Defendant's objections to the R&R and the administrative record from the SSA, the Court

16   hereby ACCEPTS the Magistrate's recommendation, REVERSES the denial of benefits by Defendant

17   Jo Anne Barnhart, Commissioner of the SSA, and REMANDS the matter for an award of benefits.

18                              **BACKGROUND**

19          Plaintiff Michael Dingman applied for Disability Insurance Benefits and Social Security

20   Insurance in March and April of 1999. The Administrative Law Judge ("ALJ") applied the SSA's five-

21   step analysis, see 20 C.F.R. § 404.1520, and concluded that Plaintiff had "severe impairments" but did

22   not meet a Listing as required for a finding of disability at step three. At step five, the ALJ found that

23   Plaintiff could not perform his past work as a construction worker but could perform "light work and

24   simple, repetitive tasks" currently available in significant numbers in the state and local economy. The

25

1   ALJ upheld the Disability Determination Services ("DDS") denial of benefits. (Administrative Record

2   ("AR") at 38, 40).

3          Upon review of the case, the Magistrate disagreed with the ALJ and recommended remand for

4   the calculation of benefits based on the ALJ's errors at step three and step five. In the alternative, the

5   Magistrate recommended remand to address errors in the step two "severity" analysis of additional

6   medical complaints made by the Plaintiff. (R&R at 21-22).

7          Defendant's Objections attribute several errors to the Magistrate's recommendation. 1) The

8   Magistrate erred in finding the Plaintiff disabled under listing 12.05(C). 2) The Magistrate erred in

9   finding that the Commissioner did not meet her burden of proving available employment for the

10  Plaintiff. 3) The Magistrate erred in his "severity" analysis because he did not give adequate deference

11  to the ALJ required by the substantial evidence standard of review.

12                                    **DISCUSSION**

13         The Court reviews de novo the Magistrate's recommendation to reverse the ALJ's denial of

14  benefits. However, the Court can only set aside the denial of benefits when the ALJ's determination is

15  based on legal error or is not supported by substantial evidence in the record as a whole. Smolen v.

16  Chater, 80 F. 3d 1272, 1279 (9th Cir. 1996). "Substantial evidence is relevant evidence which,

17  considering the record as a whole, a reasonable person might accept as adequate to support a

18  conclusion." Flaten v. Sec'y of Health & Human Servs., 44 F. 3d. 1453, 1457 (9th Cir. 1995).

19  Furthermore, where evidence is susceptible to more than one rational interpretation, the ALJ's

20  decision must be upheld. Thomas v. Barnhart, 278 F. 3d 947, 954 (9th Cir. 2002).

21         The claimant has the initial burden of proving disability. 42 U.S.C. § 423(d)(5), Swenson v.

22  Sullivan, 876 F. 2d 683, 687 (9th Cir. 1989). When the claimant establishes an inability to continue

23  with former work, the burden shifts to the Commissioner of the Social Security Administration to

24  demonstrate that other substantial employment exists within the national economy. Swenson, 876 F.

25  2d at 687.

1

**I. Step Three Analysis: Requirements for Listing 12.05(C)**

2

At step three of the SSA's analysis, a claimant who meets listing 12.05(C) automatically

3

qualifies for benefits.

4

> Listing 12.05. Mental retardation: Mental retardation refers to significantly
> subaverage general intellectual functioning with deficits in adaptive functioning initially
> manifested during the developmental period; i.e., the evidence demonstrates or

5

> supports onset of the impairment before age 22. The required level of severity for this

6

> disorder is met when the requirements in A, B, C, or D are satisfied...
> (C) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or

7

> other mental impairment imposing an additional and significant work-related limitation
> of function.

8

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05.

9

In order to qualify for 12.05(C) the claimant must meet the IQ and impairment requirements of

10

subsection (C)  in addition to the "capsule definition" requirements of subaverage intellectual

11

functioning and deficits in adaptive functioning in 12.05. Defendant does not contest the fact that

12

Plaintiff has a valid IQ score of 70 and an additional physical impairment. The objections to the

13

Magistrate's step three analysis focus on the introductory paragraph of 12.05.

14

**A. Formal Medical Diagnosis**

15

Defendant argues that 12.05  implicitly requires a formal medical diagnosis of mental

16

retardation which Plaintiff lacks. Defendant relies on a general explanation of the use of the listings. "If

17

the medical findings needed to support a diagnosis are not given in the introduction or elsewhere in the

18

listings, the diagnosis must still be established on the basis of medically acceptable clinical and

19

laboratory diagnostic techniques." 20 C.F.R.§ 404.125(c), 416.925(c). However, the introduction to

20

the Mental Disorders listings in 12.00(A) explicitly states: "If your impairment satisfies the diagnostic

21

description in the introductory paragraph and any one of the four sets of criteria, we will find that your

22

impairment meets the listing." 20 C.F.R. Subpt P, App. 1, §12.00A.

23

Based on the plain language of the introduction specific to Mental Disorders in 12.00(A), the

24

Magistrate correctly found that only the criteria of 12.05 needs to be met, with no additional burden of

25

a formal medical diagnosis. Plaintiff does not need a formal medical diagnosis to qualify as mentally retarded under 12.05.

### B. Legal Requirements for Mental Retardation

The "capsule" definition of mental retardation contains two requirements that must manifest before age 22: 1) significant subaverage general intellectual functioning, and 2) deficits in adaptive functioning. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05.

### i. Subaverage General Intellectual Functioning

Defendant concedes that "there is no issue about whether Plaintiff has subaverage general intellectual functioning" and further admits that the medical expert testified that Plaintiff's intellectual functioning had likely been stable over his lifetime. (Def.'s Objections at 5). Based on these admissions, Plaintiff meets the first prong of the 12.05 general definition.

### ii. Deficits in Adaptive Functioning

The legal standard for the second prong of the "capsule definition" is uncertain. The preponderance of the circuits, including the Ninth Circuit have not reached the issue. The Eleventh Circuit has addressed the complete definitional requirements for 12.05 and adopted a broad presumption that "a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age twenty-two, when she presented evidence of low IQ test results after the age of twenty-two." Hodges v. Barnhart, 276 F. 3d 1265, 1266 (11th Cir. 2001). However, the Magistrate did not rely on the broad presumption of Hodges but analyzed adaptive deficiencies separately from IQ.

Because the standard for determining "deficits in adaptive functioning" remains undefined, the Magistrate and Defendant provide their own definitions which do not differ significantly. Defendant uses the DSM-IV explanation of adaptive functioning: "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background and community setting." (Def.'s Objections at 6).

ORDER - 4

1  The Magistrate analyzes adaptive functioning in terms of "an individual's ability to function

2  academically, care for themselves, and live independently" as defined by the American Psychiatric

3  Association. (R&R at 14).

4          **C. Factual Dispute Regarding "Deficits in Adaptive Functioning"**

5          The ALJ based his finding that Plaintiff did not have the requisite adaptive functioning deficit

6  on several sources cited throughout his opinion. The Medical Expert ("ME") testified that the Plaintiff

7  did not meet any of the listings and his "work history did not suggest any problems with adaptive

8  functioning; as long as he could perform physically, he could adapt." (AR at 38). A reviewing DDS

9  psychologist found "insufficient evidence of a mental disorder...he had no difficulty with day-to-day

10 functioning or social interaction." (AR at 39). A social security interviewer reported that Plaintiff

11 showed no difficulties with concentration or understanding during their telephone session. (AR at 39).

12 Finally, Plaintiff's daily life demonstrated that he "has been able to take care of his family, which can

13 be mentally and physically challenging, without much assistance." (AR at 38).

14         The Magistrate disagreed with the ALJ's findings on Plaintiff's adaptive functioning for three

15 major reasons. 1) Plaintiff has a history of special education; 2) his work history shows an inability to

16 maintain unskilled jobs after he could no longer perform as a construction worker; 3) the ALJ's

17 reliance on the ME's opinion was improper because the opinion was deficient. The Defendant objects

18 to the findings due to a lack of evidence of deficits in adaptive functioning because case law does not

19 hold that special education is sufficient to prove deficiencies. Plaintiff was also able to hold a job and

20 earn significant income. The Defendant further argues that the ME's testimony was not deficient and

21 properly accepted over the treating and examining physicians.

22         The Magistrate looks to the Plaintiff's history of special education classes as only one factor

23 for evaluating Plaintiff's adaptive function, relying on Ware ex rel. v. Shalala, 902 F. Supp. 1262, 1271

24 (E.D. Wash. 1995). Although Ware does not explicitly treat special education classes as proof of

25 adaptive functioning deficiency, such an educational history was an important factor in the claimant's

1   background which might show adaptive deficiencies. 902 F. Supp. at 1271. <u>See also</u>, <u>Markle</u>, 324 F.

2   3d 182, 189 (3d Cir. 2003) (case was remanded for development of factors including claimant's

3   participation in special education until ninth grade when he left school). In addition to special

4   education, the Magistrate also considers the Plaintiff's functional illiteracy and substantial difficulties

5   with math as evidence of adaptive problems. He cites the Commissioner's approval of the use of

6   education as a factor for determining adaptive deficiencies because "12.05(C) accommodates the

7   American Psychiatric Association's analysis of metal retardation which looks to an individual's ability

8   to function academically..." (R&R at 14). Education is an indicator of a claimant's ability to function

9   academically and lead an independent life that the ALJ failed to adequately consider in his evaluation

10  of the Plaintiff's adaptive functioning.

11          In addition to education, the ALJ should have given more consideration to the specifics of

12  Plaintiff's past work history in his determination of his adaptive functioning level. The Third Circuit

13  has indicated that employment history may be valuable for proving deficiency in adaptive functioning.

14  <u>Markle</u>, 324 F. 3d at 189 (remanded to ALJ to develop the facts). Defendant cites Plaintiff's ability to

15  earn a decent living during the development period (before age 22) as a demonstration of adequate

16  adaptive skills. (Def.'s Objections at 7-8). However, Plaintiff could perform construction jobs only

17  because he learned the repetitive work from his uncle. Additionally, Plaintiff succeeded at his

18  construction work because he could perform the heavy labor and a friend handled the paperwork and

19  read the blueprints. (R&R at 14). Due to his inability to perform physically because of his back injury,

20  Plaintiff has been unable to hold a job. (R&R at 14). This past history demonstrates Plaintiff's severely

21  limited ability to "meet the standards of personal independence" showing deficits in adaptive

22  functioning. (Def.'s Objections at 6)

23          The Magistrate found the Medical Expert's ("ME") opinion about Plaintiff's functional ability

24  deficient because his testimony relied heavily on the Plaintiff's previous employment, showed

25  unfamiliarity with some of the testing administered, and demonstrated hesitation in his final conclusion

about 12.05. The ME based most of his testimony on Plaintiff's successful work history in the construction industry. He testified that "the claimant's work history did not suggest any problems with adaptive functioning; as long as he could perform physically, he could adapt." (AR at 38). This statement ignores the fact that Plaintiff can no longer perform physically due to his back injury. In fact, the ME's statement suggests that the Plaintiff cannot adapt if he cannot perform physically. This is precisely the scenario at hand. The ME failed to completely consider the Plaintiff's functional ability and the ALJ relied on this flawed testimony for his finding that Plaintiff did not meet the 12.05(C) listing.

The ME's evaluation of Plaintiff's adaptive functioning was highly conclusory and equivocal. When the ALJ asked if Plaintiff met 12.05 the ME responded "[w]ell...I don't feel very comfortable– I don't think it's appropriate for me to make a diagnosis, just sort of on a limited basis. I mean I didn't even interview him..." (AR at 653). Despite the hesitation, the ALJ relied heavily on the ME's opinion that Plaintiff did not meet the 12.05(C) listing. Although the Defendant emphasizes the ME's qualifications by saying he was chosen for his expertise in interpreting complex medical records, he did not personally evaluate Plaintiff and his testimony does not demonstrate a command of the requirements for 12.05 or confidence in his evaluation of Plaintiff's functional level.

Looking at the evidence of Plaintiff's difficulties as documented compared to the ME's hesitant testimony, the evidence in the record as a whole does not support the ALJ's finding that Plaintiff fails to meet the 12.05(C) listing. Defendant argues that none of the examining and treating psychologists formally diagnosed mental retardation. However, a formal diagnosis is not a requirement of the 12.05 listing, and the psychologists' opinions provided lengthy descriptions of Plaintiff's problems with comprehension, memory, writing, reading and math skills that portray extreme limitations. (AR at 236-7). These limitations are further described in Plaintiff's testimony about his difficulties with shopping, counting his change, reading road signs, finding his way to appointments and following television shows and baseball on the radio. (AR at 618-19, 627-28, 644). The ALJ may have chosen to ignore

1  this troubling testimony due to concerns about credibility because "[t]he claimant's statements

2  concerning his impairments and their impact on his ability to work are not entirely credible in light of

3  the medical reports and other evidence of record." (AR at 41). However, much of this evidence came

4  from the ME's testimony despite the fact that he did not evaluate Plaintiff and expressed reluctance to

5  opine on the 12.05 listing.  Plaintiff's testimony about his limitations agreed with the examining

6  physician's opinions and should not have been disregarded.

7       Given the standard that "[s]ubstantial evidence is relevant evidence which, considering the

8  record as a whole, a reasonable person might accept as adequate to support a conclusion," the ALJ's

9  findings are not not adequately supported. <u>Flaten</u>, 44 F. 3d. at 1457. Plaintiff's testimony about his

10  limitations in daily function, Plaintiff's educational and work history, the opinions of evaluating

11  psychologists found in the record, and the ME's deficient testimony preclude the ALJ's determination

12  that Plaintiff does not meet the 12.05 listing. This listing yields a finding of disability at step three and

13  requires a grant of benefits.

14       Because the step three analysis is dispositive, the Court does not reach the objections to the

15  Magistrate's recommendations on steps two and five of the disability determination analysis.

16                                   **CONCLUSION**

17       The Court ACCEPTS the Magistrate's recommendation and REVERSES the ALJ's denial of

18  benefits. The ALJ's decision against Plaintiff's qualification under 12.05(C) was not supported by

19  substantial evidence. The case should be REMANDED for calculation and grant of benefits.

20

21       The clerk is directed to provide copies of this order to all counsel of record.

22       Dated: August 2, 2005

23

24                                   _____
                                     Marsha J. Pechman

25

ORDER - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

United States District Court

ORDER - 9